UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MEGHAN HALL,

                           Plaintiff,

      -against-

GEORGE JENNINGS, PEOPLE, INC., CHRISTINA
MICCIO, Individually and as Site Director for Orange/
Ulster Rose House of People, Inc., MOIRA DWYRE,
Individually and as Chief Services Officer of People, Inc.,
ALYSSA KULIBABA, Individually and as Site Director
for Putnum Rose House of People, Inc., STEVE MICCIO,
Individually and as Chief Executive Officer of People, Inc.,
KRISTEN PETTIRANO, Individually and as Senior Peer
and Assistant Manager of People, Inc., STAFF LINE, INC.
EDWARD KALOWSKI, Individually and as Human
Resources Representative of Staff Line, Inc.,

                        Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

Case No.: 7:16-cv-08284

       Plaintiff, by and through her attorneys, METH LAW OFFICES, P.C., brings this action

against the Defendants for damages she sustained for personal injuries as a result of a sexual assault

that occurred while she was employed by Defendant People, Inc., and Defendant George Jennings's

battery and assault. Plaintiff demands a jury trial. Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

      1.     Plaintiff is a 31 year old female and mother of one young child. Plaintiff is a former

employee of People, Inc.

      2.     While working as a peer companion for Defendant People, Inc., Plaintiff was sexually

assaulted and forcibly raped by Defendant Jennings, a 51 year old man, also an employee of

Defendant People, Inc.  As a result, Plaintiff has sustained, and continues to sustain, physical

injuries, emotional and psychological injuries.

3.      Upon information and belief, a sexually hostile environment persisted at Defendant People, Inc.'s work premises prior to the attack on Plaintiff.  This environment allowed a culture to persist which lead to the gruesome attack.  Upon information and belief, staff members were sexually harassed by guests, and staff members were sexually harassed other staff members. Staff members sexually Staff members were engaging in sexually inappropriate behavior with individuals that were neither employees nor guests on the work premises.  Upon information and belief, Defendant Jennings sexually harassed at least three other girls prior to Plaintiff's rape and attack.

4.      Staff members, senior staff members, and levels of upper management, knew of these conditions and sexually hostile work environment that persisted on the work premises.  Defendants failed to take steps necessary to secure a safe working environment for Plaintiff, and allowed the sexually hostile environment to persist at an organizational level.

5.      Accordingly, Plaintiff seeks monetary damages to remedy the Defendants' negligence supervision, failure to protect, failure to provide a safe environment, failure to promulgate adequate rules and procedure, failure to provide adequate security measures, negligent security, failure to have procedures in place to prevent sexual assaults, assault and battery, as well as injunctive relief.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

7.      The United States District Court for the Southern District of New York is the proper venue for this action under 28 U.S.C. § 1391(b), as all Defendants are residents of the State in which the district is located. Defendant People, Inc. and Defendant Staff Line, Inc. reside within the Court's

judicial district pursuant to 28 U.S.C. § 1391(c)(2), as an entity is deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction.

## PARTIES

**Plaintiff**

8.      Plaintiff, Ms. Meghan Hall, resides at 3 Burrow Drive, Highland Mills, NY 10930. Plaintiff is a natural person, a current resident of Orange County, and a citizen of the State of New York.

**Defendant**

9.      At all times relevant to this action, Defendant People, Inc. was and is an entity residing at 126 Innis Avenue, Poughkeepsie, NY.  People, Inc. is an entity organized and existing under and by virtue of the Laws of the State York and a business entity doing business within the State of New York.  At all times hereinafter mentioned, upon information and belief, Defendant People, Inc., controlled the premises located in Milton, NY, the location where Plaintiff was raped and attacked.

10.     At all times hereinafter mentioned, upon information and belief, Defendant George Jennings (hereinafter "Defendant Jennings") was an employee of People, Inc., who worked at the respite houses located in Milton, NY, and Garrison, NY.  At all times hereinafter mentioned, upon information and belief, Defendant Jennings, resides in the State of New York.

11.     At all times hereinafter mentioned, upon information and belief, Defendant Christina Miccio  (hereinafter "Defendant Christina Miccio") was a Site Director for Orange/Ulster Rose House of People, Inc. At all times hereinafter mentioned, upon information and belief, Defendant Miccio, resides in the State of New York.

12.     At all times hereinafter mentioned, upon information and belief, Defendant Moira Dwyre (hereinafter "Defendant Dwyre") was Chief Services Officer of People, Inc., of People, Inc. At all times hereinafter mentioned, upon information and belief, Defendant Dwyre, resides in the State of New York.

13.     At all times hereinafter mentioned, upon information and belief, Defendant Alyssa Kulibaba, (hereinafter "Defendant Kulibaba") was a Site Director of the Putnam Rose House of People, Inc.  At all times hereinafter mentioned, upon information and belief, Defendant Kulibaba, resides in the State of New York.

14.     At all times hereinafter mentioned, upon information and belief, Defendant Steve Miccio (hereinafter "Defendant Steve Miccio") was Chief Executive Officer of People, Inc.  At all times hereinafter mentioned, upon information and belief, Defendant Miccio, resides in the State of New York.

15.     At all times hereinafter mentioned, upon information and belief, Defendant Kristen Pettirano, was a senior peer and assistant manager of People, Inc.  At all times hereinafter mentioned, upon information and belief, Defendant Pettirano, resides in the State of New York.

16.     At all times relevant to this action, Defendant Staff Line, Inc. was and is an entity residing at 53 Academy Street, Poughkeepsie, NY.  People, Inc. is an entity organized and existing under and by virtue of the Laws of the State York and a business entity doing business within the State of New York. At all times hereinafter mentioned, upon information and belief, Defendant Staff Line, Inc. contracted to perform human resource work with People, Inc.

17.     At all times hereinafter mentioned, upon information and belief, Defendant Edward Kalowski, was a human resource employee of Staff Line, Inc.  At all times hereinafter mentioned, upon information and belief, Defendant Kalowski, resides in the State of New York.

## STATEMENT OF FACTS

18.     On or about September 2015, Plaintiff was hired with Defendant People, Inc. to work as a peer companion with mentally disabled persons at a respite house.

19.     Defendant People, Inc. had three (3) respite houses at the time, "Milton house" located in Milton, NY, "Garrison house" located in Garrison, NY, and one other in Glenn Falls, NY.

20.     Plaintiff's job as a peer companion entailed listening to and assisting mentally ill individuals, referred to as "guests," during their stay at the respite house.  Plaintiff would transport guests to and from the store, clean the house, and make sure guests' bed were made.

21.     Prior to Plaintiff's training and the horrific attack,  upon information and belief, at least two (2) other female employees had complained of Defendant Jennings's sexual harassing them to senior staff members. Upon information and belief, Defendant Jennings engaged in sexual behavior with females who were not employees nor guests on work premises, which were reported to senior staff members. Upon information and belief, Defendant Jennings made sexually inappropriate comments regarding female employees.  Upon information and belief, no remedial measures were taken.  Upon information and belief, Defendant Staff Line, Inc. and Defendant Kalowski were delegated the responsibility and duty of investigating sexual harassment complaints against Defendant Jennings and failed to do so.

22.     Plaintiff began training on October 7, 2015 at the Garrison house.  Plaintiff did not receive any documentation nor training regarding Defendant People, Inc.'s anti-sexual harassment policy.

23.     On or about October 18, 2016, while working in Garrison House, Defendant Jennings began to make unwelcome advances at Plaintiff.  Defendant caressed Plaintiff's breasts while she

was on the computer, rubbed his gentiles against her buttocks, and put his hand down her pants and his fingers inside of her vagina while she was putting away her jacket. Defendant did not report this incident because she had absolutely no information on how to report this and was mortified, embarrassed, and humiliated.

24.     Plaintiff immediately informed Defendant Jennings that she did not consent to the touching by moving away and stating "this can't happen."

25.     On or about the evening of October 18, 2016, Defendant Jennings sent text messages to Plaintiff stating "we have to finish what we started." Plaintiff again immediately advised Defendant she did not consent to his actions by responding "There is nothing to finish. This can't happen." Defendant Jennings persisted in his efforts by asking to hang out with Plaintiff, which Plaintiff declined.

26.     Defendant's unlawful and inappropriate behavior ceased to exist. At the time, Plaintiff did not report Defendant Jennings behavior to Defendant People Inc., as she was under the belief her expressed dissent was sufficient to handle the situation.

27.     Plaintiff also feared confrontation with Defendant Jennings if she expressed her dissent in a more forceful manner. Plaintiff did not know how Defendant Jennings would react, as she was working alone at a respite house with Defendant Jennings and another male. Defendants written materials regarding such situation were not adequate. There were no protocols in place to assure employees received and understood them. There was no proper training that employees knew what to do in such a situation. There is further evidence that many reports similar to these prior in time to Plaintiff's attack were ignored by people in a position to take action.

28.     On or about October 24, 2015, Plaintiff was working a double shift at the Milton house. Plaintiff was by herself with three (3) guests, two (2) males and one (1) female.

29.     Two of the guests were leaving that day.  One male had left, and the female needed to be driven home.

30.     The other male guest could not stay in the Milton house by himself.  Plaintiff was uncomfortable having the male guest accompany her in dropping off the female guest, as she would be alone with the male guest driving back to the respite house.  Therefore, having no other alternative, Plaintiff called Defendant Jennings to assist her with the transportation.

31.     Defendant Jennings went to the respite house and set up medical transportation for the female guest.  The female guest left the Milton house.

32.     Defendant Jennings, Plaintiff, and one male guest remained in the respite house.

33.     The male guest communicated to Plaintiff and Defendant Jennings that he felt suicidal and needed to be transported to the hospital, which Defendant Jennings arranged.

34.     Plaintiff remained alone in the Milton house with Defendant Jennings.

35.     Immediately after the male guest was transported out of the Milton house, Defendant attacked Plaintiff.  Defendant Jennings approached Plaintiff while she was sitting on the couch in the home and hugged and kissed her neck and ear.  Plaintiff expressed her dissent by stating this was not a good idea and attempted to move away from Defendant Jennings.  Defendant Jennings pushed her down on the couch and pulled up her shirt.  Mortified, Plaintiff pulled her shirt back down.

36.     Defendant Jennings put his hand down Plaintiff's pants despite Plaintiffs continuous efforts to move and pull his hand away.

37.     Plaintiff attempted to get up, but Defendant overpowered her, grabbed her by the legs, and pulled her back onto the couch.  Defendant forcibly inserted his fingers into Plaintiff's vagina and buttocks.  Plaintiff repetitively told Defendant Jennings "NO" and "this was not a good idea." Plaintiff continuously attempted to push Defendant Jennings away and get up to no avail.

38.    Defendant, while restraining Plaintiff by holding her stomach down with one hand, took his gentiles out with the other hand. Plaintiff again expressed her dissent by stating "No this can't happen," "this is not a good idea," and "I'm not on birth control either." Defendant responded by smiling at Plaintiff and forcibly raping her.

39.    Defendant restrained Plaintiff by pinning down one arm with his arm and put his hand around her throat.  Defendant Jennings also held her hand down tight, while his other hand held her wrist down.

40.    Defendant continued to forcibly rape Plaintiff by shoving his gentiles into her mouth and forcing his fingers into her vagina.  Defendant Jennings continued to forcibly penetrate Plaintiff's mouth. Upon forcibly ejaculating in Plaintiff's mouth, Defendant kissed her head, and stated "If you need any more help, just call me and I will come back."

41.    Plaintiff immediately reported the incident to her then counselor, Ursula Pysner Herner, LCSW.  Ms. Herner called the Milton house manager, Defendant Christina Miccio, who came to the respite house with her father, Defendant Steve Miccio.

42.    Defendant Christina Miccio called the director of houses, Defendant Dwyre, who also came to the Milton house. Defendant Christina Miccio stated she would contact the police but failed to do so. Plaintiff's mother had to contact the police instead.

43.    After the police arrived at the Milton house and took Plaintiff's statement, she was transported via ambulance to St. Luke's Hospital to have a rape kit completed.

44.    Plaintiff also went to her gynecologist on October 26, 2015. However, her doctor was unable to complete the exam due to the tearing and bleeding Plaintiff was still suffering days after the attack.  Plaintiff bled for nine (9) days after the rape.

45.    Initially, People, Inc. gave Plaintiff three (3) weeks medical leave and told her she

would never have to go back to the Milton house where her attack occurred. At no time did Defendant People, Inc. state that Defendant Jennings would be fired or disciplined. Upon informatin and belief, no proper investigation was commenced.

46.     Upon her return to work in November 2015, Plaintiff worked between the Garrison house and a respite house in Walden, NY.  On or about this time, three (3) weeks after the sexual assault took place and for the first time since her hire date, Plaintiff was given paperwork regarding workplace anti-sexual harassment policy at Plaintiff's "new employment orientation."

47.     Plaintiff continuously voiced her fear of being left alone with males.  However, Defendant People, Inc. continued to leave Plaintiff alone with males, including mentally ill ones. Defendant People, Inc. refused to double staff.

48.     Defendant Christina Miccio sent Plaintiff back to Milton house to clean despite her voiced fear of being sexually assaulted there again.

49.     Upon information and belief, the individual Defendants knew of Defendant Jennings's sexual predatory nature and sexually violent propensities based on prior reports and/or complaints.

50.     Other staff members, including senior staff members witnessed Defendant Jennings's sexually aggressive behaviors themselves but failed to do anything about it.

51.     Defendant People, Inc. both failed and refused to do anything about previous complaints they received about Defendant Jennings from multiple female employees.

52.     That Defendant Jennings knew that his touching and forceful rape of Plaintiff was harmful and offensive, and would cause physical harm, emotional distress, and suffering.

53.     That Defendant People, Inc. as an employer and acting within the scope of its duty, failed to protect Plaintiff from harm while she was employed by them and working for their benefit,

as well as other female employees.  Defendant People, Inc. also failed to supervise staff, properly train employees, and provide adequate written materials regarding sexual harassment policies and procedures.

54.     That Defendant Staff Line, Inc. failed to properly investigate allegations and complaints of sexual harassment.

55.     That Defendant Christina Miccio, Defendant Kulibaba, Defendant Steve Miccio, Defendant Pettirano, Defendant Dwyre, and Defendant Kalowski failed in their respective duties in executing flawed policies on sexual harassment which were never effectively communicated to Defendant People, Inc.'s employees.

56.     Plaintiff suffered physical injuries and trauma from Defendant Jennings's unwanted and forceful contact. Plaintiff has also suffered anxiety and depression as a result from the incident and is currently seeking counseling and treatment for same.

57.     On April 21, 2016, Plaintiff filed a charge letter with the Equal Employment Opportunity Commission ("EEOC").  On or about October 3, 2016, Plaintiff received Respondent's verified response.  Plaintiff filed a rebuttal statement on October 18, 2016.

58.     Plaintiff also requested a Notice of Right to Sue Letter on August 30, 2016 and to date has not received a response.  Plaintiff is filing this complaint to perverse the statute of limitations.

## AS AND FOR A FIRST CAUSE OF ACTION

**Hostile Work Environment Sexual Harassment/Discrimination
42 U.S.C. § 2000e-2(a)(1)**

**(Against Defendant People, Inc., Defendant Dwyre, Defendant Steve Miccio,
Defendant Staff Line, Inc., and Defendant Kalowski)**

59.     Plaintiff repeats and realleges each and every allegation set forth in the  preceding

paragraphs of this complaint.

60.     Plaintiff was hired as a peer companion with Defendant People, Inc. in September 2015.

61.     During Plaintiff's employment with Defendant, Plaintiff was subjected to unwelcomed and unwanted sexual advances and other verbal and physical conduct of sexual nature. Defendant Jennings unlawfully touched Plaintiff while they were working.  Defendant Jennings sent sexually suggestive text messages to Plaintiff.  On a separate day, Defendant restrained and raped Plaintiff.

62.     The conduct substantially interfered with Plaintiff's employment and created an intimidating, hostile, and offensive work environment.

63.     A reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and abusive in the manner which Plaintiff believed it to be as a result of Defendant Jennings's inappropriate and unwanted conduct.

64.     Defendants at all times relevant herein had actual and constructive notice of Defendant Jennings's unlawful conduct.  At least three other female workers notified their managers that Defendant Jennings had inappropriately and unwelcomely touched them. Defendants failed to take any remedial action to put an end to the harassment Plaintiff and other works suffered.

65.     Defendants failed to take proper steps to stop the harassment and assault thereby becoming a party to the discriminatory action and unlawful conduct.

66.     Defendants discriminated against female workers by treating them differently from and less preferably to similarly situated male employees. Defendants have aided and abetted harassment, hostile work environments, and other forms of discrimination in violation of Title VII. Defendants failed to take any sort of remedial steps after receiving several complaints of sexual

harassment by Defendant Jennings from other female employees.   After Plaintiff's attack, Defendants continued to place female employees alone in homes with only males.

67.     As a direct and proximate result of the said unlawful employment practices, Plaintiff was damaged and suffered mention and emotional harm, anguish and humiliation.

68.     By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

### AS AND FOR A SECOND CAUSE OF ACTION

**Violation of NY Exec Law § 296**

**(Against Defendant People, Inc., Defendant Dwyre, Defendant Steve Miccio, Defendant Staff Line, Inc., and Defendant Kalowski)**

69.     Plaintiff repeats and realleges each and every allegation set forth in the  preceding paragraphs of this complaint.

70.     Plaintiff was hired in September of 2015 as a peer companion.

71.     Defendants created in a hostile work environment for Plaintiff by allowing Defendant Jennings, an employee, to make constant sexually harassing comments and unwelcome and unlawful sexual advances to female employees, including Plaintiff.   After the attack on Plaintiff, Defendants continued to schedule Plaintiff on work shifts with only males.

72.     Plaintiff has been subjected to Defendants' disparate treatment on the basis of her sex.

73.     As a result of Defendants' conduct, Plaintiff has suffered, and will suffer mental anguish, emotional and physical distress, loss and enjoyment of life, and has incurred and will incur damages thereby.

## AS AND FOR A THIRD CAUSE OF ACTION

### Negligent Supervision/Retention/Hiring

**(Against Defendant People, Inc., Defendant Christine Miccio, Defendant Dwyre
Defendant Steve Miccio, Defendant Kulibaba, Defendant Pettirano,
Defendant Staff Line, Inc., and Defendant Kalowski)**

74.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this complaint.

75.     Defendants employed and continued to employ Defendant Jennings after several notices of sexual harassment against Defendant Jennings by female employees of the Defendants.

76.     Defendants placed its employees, specifically, Plaintiff, in a position of foreseeable harm, which caused the attack of Plaintiff.

77.     The attack on Plaintiff could have been spared had Defendants taken reasonable care in supervising and/or retaining its employees, specifically Defendant Jennings.

78.     Defendants knew or should have known of Defendant Jennings's propensity for sexually aggressive conduct and harassment directed at the employees of Defendants and did nothing to prevent the sexually hostile work environment.

79.     Due to Defendants' negligent supervision/retention/hiring which resulted in Plaintiff's attack and injuries, Plaintiff is entitled to recover damages and Defendants are thus liable for damages in an amount to exceed jurisdictional limits of all lower courts which may have jurisdiction over this matter.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Negligence

**(Against Defendant People, Inc., Defendant Christine Miccio, Defendant Dwyre
Defendant Steve Miccio, Defendant Kulibaba, Defendant Pettirano,**

**Defendant Staff Line, Inc., and Defendant Kalowski)**

80.     Plaintiff repeats and realleges each and every allegation set forth in the  preceding paragraphs of this complaint.

81.     At all times relevant hereto, Defendants were charged with making sure its supervisors and employees complied with all applicable laws, rules, procedures, and regulations to ensure employee security and safety.

82.     Defendant Jennings had the opportunity to sexually assault and rape Plaintiff because of Defendants' multiple failures. Defendants negligently failed to train its employees, failed to follow its own rules and procedures, failed to promulgate adequate rules and procedures to prevent such an occurrence, and failed to provide adequate security measures for employees in the workplace.

83.     As a result of Defendants' negligence, malfeasance and nonfeasance, Plaintiff sustained severe and irreparable injuries and damages, including medical expenses, pain and suffering, and emotional trauma.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Negligent Security

**(Against Defendant People, Inc., Defendant Christine Miccio, Defendant Dwyre
Defendant Steve Miccio, Defendant Kulibaba, Defendant Pettirano,
Defendant Staff Line, Inc., and Defendant Kalowski)**

84.     Plaintiff repeats and realleges each and every allegation set forth in the  preceding paragraphs of this complaint.

85.     Defendants failed to provide adequate security measures, failed to notice and guard against suspicious persons and failed to protect the Plaintiff from the attack.

86.     Despite   knowledge   of   Defendant   Jennings's   past   sexual   harassment   and

inappropriateness with other employees, Defendants failed to take adequate safety precautions to guard against future similar crimes committed by Defendant Jennings, failed to warn the employees working in the same building, including Plaintiff, of Defendant Jennings's previous incidents of sexual harassment with female workers, and failed to implement adequate security measures and security personnel on the floor to protect employees from such attacks by Defendant Jennings.

87.     Defendants' acts or omissions were grossly negligent, reckless, wanton and malicious, and constitute more than mere negligence.

88.     As a result of Defendants' grossly negligent, reckless, wanton and malicious conduct, Plaintiff sustained severe injuries and damages including medical expenses, and pain and suffering.

## AS AND FOR A SIXTH CAUSE OF ACTION

### Assault

### (Against Defendant Jennings)

89.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs this complaint.

90.     Defendant Jennings intentionally placed Plaintiff in fear of imminent harmful and offensive contact. Without Plaintiff's consent, Defendant made unwelcomed sexual advances at Plaintiff during work hours on numerous occasions.  Defending Jennings approached Plaintiff and restrained her. Plaintiff, acting under a reasonable fear that Plaintiff was going to rape her, attempted to pull away.

91.     As a direct and proximate result of the aforementioned sexual assault, Plaintiff suffered, and continues to suffer mental anguish, severe psychological and emotional distress, physical harm, conscious pain and suffering, shock, fright, humiliation, and other direct and

consequential damages. Plaintiff sought psychological counseling and therapy as a result of Defendant's acts.

92.     Due to the assault which resulted in plaintiff's injuries, Plaintiff is entitled to recover damages and the Defendant is thus liable for damages in an amount to exceed jurisdictional limits of all lower courts which may have jurisdiction over this matter.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### Battery

### (Against Defendant Jennings)

93.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this complaint.

94.     Defendant Jennings committed and intended to commit harmful and offensive bodily contact upon Plaintiff. Without Plaintiff's consent, Defendant sexually assaulted, restrained, penetrated, and raped Plaintiff. Defendant's intent was clear by his repeated attempts and text messages.

95.     As a direct and proximate result of the aforementioned assault, Plaintiff suffered, and continues to suffer mental anguish, severe psychological and emotional distress, physical harm, conscious pain and suffering, shock, fright, humiliation, and other direct and consequential damages. Plaintiff sought psychological counseling and therapy as a result of Defendant's acts.

96.     Due to the battery which resulted in Plaintiff's injuries, Plaintiff is entitled to recover damages and the Defendant is thus liable for damages in an amount to exceed jurisdictional limits of all lower courts which may have jurisdiction over this matter.

## AS AND FOR A EIGHT CAUSE OF ACTION

### False Imprisonment

### (Against Defendant Jennings)

97.     Plaintiff repeats and realleges each and every allegation set forth in the  preceding paragraphs of this complaint.

98.     Defendant Jennings intended to confine Plaintiff by restraining her, holding her down, and choking her when he committed the sexual assault.

99.     Plaintiff at all times was conscious of the confinement.

100.     Plaintiff did not consent to the confinement, as evidenced by her attempts to pull him away, get off the couch, and express dissent.

101.     Defendant Jennings had no privileged basis for the confinement, as he was merely a co-employee.

102.     Due to the battery which resulted in Plaintiff's injuries, Plaintiff is entitled to recover damages and Defendant Jennings is thus liable for damages in an amount to exceed jurisdictional limits of all lower courts which may have jurisdiction over this matter.

## AS AND FOR A NINTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against all Defendants)

103.     Plaintiff repeats and realleges each and every allegation set forth in the  preceding paragraphs of this complaint.

104.     Defendant Jennings intentionally engaged in conduct that was extreme and outrageous.  Plaintiff was subjected to unwelcomed sexual advanced and other verbal and physical

conduct of sexual nature. When Plaintiff made it clear that she was not interested, Defendant continued to engage in unlawful conduct. Plaintiff found it difficult to perform her job duties and found Defendant Jennings's behavior to be hostile and abusive. Plaintiff was scared on a daily basis to be alone with males. Defendant Jennings's persistent, violent, and unwelcomed actions were extreme and outrageous. As a direct and proximate result, Plaintiff suffered, and continues to suffer mental anguish, severe psychological and emotional distress, physical harm, conscious pain and suffering, shock, fright, humiliation, and other direct and consequential damages.

105.    Defendants intentionally caused Plaintiff emotional distress by creating a sexually hostile environment thereby allowing Plaintiff to be raped. Defendants intentionally caused Plaintiff emotional distress by failing to take any sort of remedial measures against Defendant Jennings after numerous allegations of sexual harassment. Defendants also intentionally caused Plaintiff emotional distress by deliberately placing her back in Milton house to work over her expressed objection after the assault occurred. Defendant People, Inc. continued to leave Plaintiff alone with males in the work place. Defendant People, Inc. knew Plaintiff was sexually assaulted in that facility and would suffer emotional distress from being placed back in that house and from being left alone with males in the workplace.

106.    Defendants' actions were extreme and outrageous. As a direct and proximate result, Plaintiff suffered, and continues to suffer mental anguish, severe psychological and emotional distress, physical harm, conscious pain and suffering, shock, fright, humiliation, and other direct and consequential damages.

107.    Due to the Defendants' conduct which resulted in Plaintiff's injuries, Plaintiff is entitled to recover damages and the Defendants are thus liable for damages in an amount to exceed jurisdictional limits of all lower courts which may have jurisdiction over this matter.

## AS AND FOR A NINTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (Against all Defendant )

108.     Plaintiff repeats and realleges each and every allegation set forth in the  preceding paragraphs of this complaint.

109.     Defendants' actions and omissions described herein constitute negligent infliction of emotional distress in that Defendants owed its employee a duty of reasonable care to its employees in hiring, supervising, and providing security for the persons they hire. Said duty was breached by retaining Defendant Jennings as an employee after numerous complaints of inappropriate sexual advances he made to other females. Defendants retained Defendant Jennings as an employee when they knew or should have known that Defendant Jennings was engaging in unlawful conduct with female employees.

110.     Said duty was further breached by continuing to leave Plaintiff alone with males, when Defendant People, Inc. knew or should have known Plaintiff was emotionally and psychologically traumatized by the sexual assault.

111.     Defendants actions negligently caused Plaintiff severe emotional distress, trauma, mental anguish, severe psychological and emotional distress, physical harm, conscious pain and suffering, shock, fright, humiliation, and other direct and consequential damages.

112.     Due to Defendants' conduct which resulted in Plaintiff's injuries, Plaintiff is entitled to recover damages and Defendants are thus liable for damages in an amount to exceed jurisdictional limits of all lower courts which may have jurisdiction over this matter.

## AS AND FOR A TENTH CAUSE OF ACTION

### Constructive Discharge

### (Against Defendant People, Inc., Defendant Christine Miccio, Defendant Dwyre Defendant Steve Miccio, Defendant Kulibaba, Defendant Pettirano)

113.    Plaintiff repeats and realleges each and every allegation set forth in the  preceding paragraphs of this complaint.

114.    Plaintiff, a female, was qualified and hired as a peer companion.

115.    After suffering through a violent and forcibly rape on work premises, Plaintiff returned to work after three weeks of medical leave. Defendants deliberately continued to leave her on work premises with only males despite her voiced fear. Defendants refused to double staff or place Plaintiff with other females. Defendants even required her to go back to the Milton house to work after she was attacked there, despite being told she would not have to.

116.    A reasonable person in Plaintiff's position would have objected and felt forced to resign if forced to continue to work in the location they were violently raped, and continue to be left alone with males in the work place.

117.    Plaintiff continuously expressed her fear and dissent for the working conditions she was facing, but Defendants did not take a single step to change them.  The working conditions Plaintiff was forced to face were so intolerable that she was left no choice but to quit.

118.    Due to Defendants' conduct which resulted in Plaintiff's constructive discharge, Plaintiff is entitled to recover damages and Defendants are thus liable for damages in an amount to exceed jurisdictional limits of all lower courts which may have jurisdiction over this matter.

## ATTORNEYS FEES

119.   Plaintiff is entitled to attorney's fees pursuant to NY Exec. Law § 297.10 due to the sexual harassment and sex discrimination she endured during her employment with Defendant People, Inc.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against each Defendant as follows:

1. For an order declaring that Defendants failed to create a safe work environment free from discrimination, sexual harassment, and constructive discharge which effectively impacted and impaired Plaintiff's work opportunity or benefit in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*);

2. For an order declaring that Defendants failed to create a safe work environment free from discrimination, sexual harassment, and constructive discharge which effectively impacted and impaired Plaintiff's work opportunity or benefit in violation of New York State Human Rights Law (NY Exec Law § 296);

3. For an order granting the Plaintiff compensatory, punitive, injunctive, and back pay damages against Defendant People, Inc. for violations of Title VII of the Civil Rights Acts of 1964 (42 U.S.C. § 2000e *et seq*);

4. For an order granting the Plaintiff compensatory, injunctive, and back pay damages against Defendant People, Inc. for violations of New York State Human Rights Law (NY Exec Law § 296);

5. For an order granting the Plaintiff compensatory, punitive, mental anguish, medical expenses, economic losses, and lost wages against all Defendants for intentional infliction of emotional distress;

6. For an order granting the Plaintiff compensatory, punitive, mental anguish, medical expenses, economic losses, and lost wages against all Defendants for negligent infliction of emotional distress;

7. For an order granting the Plaintiff compensatory, punitive, and nominal damages against Defendant Jennings for assault;

8. For an order granting Plaintiff compensatory, punitive, and nominal damages against Defendant Jennings for battery;

9.   For an order granting Plaintiff compensatory, punitive, and nominal damages against Defendant Jennings for false imprisonment;

10.  For an order granting Plaintiff compensatory damages against all Defendants (not including Defendant Jennings) for negligent supervision/retention/hiring;

11.  For an order granting Plaintiff compensatory damages against Defendants (not including Defendant Jennings) for negligent security;

12.  For an order granting Plaintiff compensatory and punitive damages against all Defendants for past pain and suffering and loss of enjoyment of life;

13.  For an order granting Plaintiff lost wages against Defendant People, Inc.;

14.  For a permanent injunction restraining and enjoining all Defendants from failing to adequately protect other similarly situated female employees from discrimination, sexual harassment, retaliation and constructive discharge within the Defendant People, Inc.'s entities;

15.  For a permanent injunction ordering all Defendants to stop engaging in unconstitutional and unlawful acts and to develop policies and procedures for ending any such constitutional and unlawful acts and the hostile and intolerant environment, including but not limited to the following:

   a.   Require all Defendants to implement mandatory and effective training programs for management, staff an employees on issues relating to discrimination and sexual harassment and methods to intervene to stop management, staff and employees from harassing other management, staff and employees based on their sex;

   b.   Require all Defendants to adopt policies with specific guidelines for instructing management, staff and employees about how to address complaints by management, staff and employees who have been harassed and/or discriminated against;

   c.   Require all Defendants to conduct assemblies for all management, staff and employees within the Defendant People, Inc.'s entities addressing issues of sexual harassment and discrimination, wherein management, staff and employees are instructed about laws prohibiting harassment and discrimination based on their sex;

   d.   Require all Defendants to assign a staff member of Defendant People, Inc.'s entities to provide active monitoring for the Defendant People, Inc.'s entities and to address instances of harassment and discrimination that arise at the Defendant People, Inc.'s entities;

      e.      Require all Defendants to maintain statistical data concerning each complaint of harassment and discrimination made by management, staff or employees as well as the specific actions taken to resolve the complaint;

16.      For an order awarding the Plaintiff expenses and costs, including reasonable attorneys fees;

17.      For an order awarding Plaintiff pre-judgment interest and post-judgment interest;

18.      Empanel a jury to fairly hear and decide this matter; and

19.      For an order awarding such other and further relief as the Court deems just and proper.

Dated: October 24, 2016
       Chester, NY

By: _____

       Michael D. Meth, Esq.
       METH LAW OFFICES, P.C.
       *Attorney for Plaintiff*
       P.O. Box 560
       Chester, NY 10918
       (845) 469-9529

## VERIFICATION

STATE OF NEW YORK        )
                         ):. ss
COUNTY OF ORANGE         )

      Meghan Hall, being duly sworn, deposes and says:

      I am the Plaintiff in the within action; I have read the annexed Verified Complaint and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
Meghan Hall

Sworn to before me this
24th day of October, 2016

_____
Notary Public

EVAN DANIEL ZUCKER
NOTARY
NO. 02ZU6313502
QUALIFIED IN
KINGS COUNTY
COMM. EXP.
10/20/2018
PUBLIC
STATE OF NEW YORK